16-6. Mr. Albert? Thank you, Your Honor. May it please the Court. My name is Richard Albert. I represent the appellant, Darren Morris. Your Honor, decisions of the Supreme Court in this Court, including a number over the four years since Mr. Morris filed his opening brief, have made clear that under the categorical approach, neither of the predicate crimes for his 924C convictions constitute crimes of violence under the Fourth Clause, Section 924C3A. For Count 2, the predicate is assault in violation of the Vicar Statute, and for Count 1, the predicate is attempted Hobbs Act robbery. I'm going to start with Count 2, vicar assault, and the first point is that both generic assault resulting in serious bodily injury and generic assault with a dangerous weapon, which are the pertinent types of assault, both of those reach reckless conduct. The government contends this is a debatable question, but it really isn't. The General Federal Assault Statute, Section 111, including the section specifically addressing assault resulting in serious bodily injury, reaches reckless conduct. That is the central holding of United States v. Zuni, 10th Circuit case that we cite, and that Zuni also cites identical holdings from two other circuits, the Ninth and the Eighth. And the same is true about reaching recklessness for both assault with a dangerous weapon under New York's statute, both assault with a dangerous weapon, which is second-degree assault in New York, and assault resulting in serious bodily injury, which is first-degree assault in New York. And both of these, and also the strong weight of authority, and particularly the Model Penal Code, which is these assaults can be committed recklessly. Now, the government tries to argue that even if these crimes reach reckless conduct, they're still crimes of violence because it's a heightened racketeering motive required by the Vicar Statute. But that argument is contradicted squarely by this court's 1999 decision in United States v. MAP, which held that the Vicar Statute does not under the underlying statute. Now, we've cited at page 11 of our reply, two examples in the Southern District of New York case law of reckless conduct, shooting in the direction of members of a rival gang that is charged as Vicar assault under the precise section, section 1959A3. So, the second point on Vicar assault is probably the nub of the matter, and it's that reckless conduct cannot constitute a crime of violence as defined by the Fourth Clause. Consistent with all other courts of appeals that have addressed the questions of time, this court has previously so held in its 2016 decision in U.S. v. Moreno, which held that reckless assault is not a crime of violence under the materially identical Fourth Clause in 18 U.S.C. section 16A. Now, the government argues that this court should go the other way based on the Supreme Court's decision in Voisin v. U.S., but that case addressed a differently worded statute, and it holds that a, quote, misdemeanor crime of domestic violence reaches reckless conduct. The government's argument is not persuasive on Voisin, first, because the Voisin decision at whether the Fourth Clause in section 16, which is identical to the Fourth Clause before us, reaches reckless conduct, and under this court's precedent, in that circumstance, the prior precedent remains binding. Second, the language of the Fourth Clause at issue here, 924C3A, is significantly different from that of the clause at issue in Voisin. The clause here includes the language, use of physical force, quote, against the person or property of another. The Supreme Court in Leocal stressed that this added language is critical in assessing the use against, is use that is targeted and identifiable to people. By definition, reckless conduct is not directed or targeted against others or particular others. It's just conscious disregard of the substantial risk that force will be applied into the world, perhaps getting a bystander, as in the case we cite at page 11 of our reply, U.S. v. O. It does not make any sense to call that using force, quote, against the bystander's person. And then further on Voisin, the purpose of the statute here is very different from the misdemeanor domestic violence statute at issue in Voisin. That one was a prophylactic statute specifically intended to take guns out of the hands of domestic abusers. If it didn't embrace reckless conduct, it would have been rendered broadly inoperative. Here, the purpose of section 924C is punitive, adding long mandatory sentences to firearm use. Your Honor, another point regarding assault is that it is not a crime of violence because it could be committed by omission. On this point, we call the court's attention to this court's, another panel of this court's, March 31, 2020 decision in the United States v. Scott, which we mentioned in the 28-J letter. And that held that New York first-degree manslaughter is not a crime of violence because it can be committed by omission. The same is true of assault. Now, turning to attempted Hobbs Act robbery, that crime is not a crime of violence because its elements are simply intent to commit the crime of Hobbs Act robbery and a substantial step toward its completion. A person can be found guilty of those elements without actually using threatening to use or attempting to use physical force against the person or property of another. I commend to the court Ninth Circuit Judge Jacqueline Nguyen's powerfully reasoned opinion dissenting in the Ninth Circuit case U.S. v. Dominguez. Judge Nguyen references some examples of attempted Hobbs Act robbery that really illustrate the point. One example is stopping an armored vehicle by standing in front of it, pointing a gun at the driver, and then pulling the trigger, but the gun jams and the driver escapes with the money. Another example is planning a robbery, buying the necessary gear, driving to near the target, but returning home after seeing the police in the vicinity. The first example is attempting to use physical force. In the second example, the actor does not use or attempt to use or threaten to use physical force, and because of that, it doesn't, under the categorical approach, meet the requirements of the Fourth Clause. Now, the government argues the contrary because it argues that attempted use is not the natural, ordinary meaning of the word attempt, trying to do something, but rather refers to the legal term of art, the legal definition of an attempt crime. That's not what the statute says. The Fourth Clause doesn't define a crime of violence as an offense that has as an element the use or threatened use against the person or property of another, or attempt to commit such an offense. That's the way the government's reading it. That construction is not uncommon in the Federal Criminal Code. Indeed, 18 U.S.C. 1959, the Vicar Statute we're looking at, defines crimes that constitute violent crimes in aid of racketeering, it lists the crime, and then adds or attempts or conspires to do so. That's not what this statute says. The government's argument disregards the immediate context of the language of the Fourth Clause. The legal term of art of attempt is a theory of liability for a crime. It's commonly used to modify and precede a statutorily defined crime. The legal term of art does not make sense preceding an element of a crime. And the Fourth Clause, Section 924 C3A, is describing elements, not crime. Judge Lynn makes this point in her opinion at 1266. This court should join the growing number of distinguished district judges in this circuit who have so ruled David's decision. Judge Carol Bagley-Ammon in the Pica case, Judge Sterling Johnson in Tucker, Judge Garibus in Cheese, Judge Teleska of the Wesson District in Lofton, and other district judges, Judge Arterton, and three judges of the 11th Circuit who've joined Judge Jill Pryor's well-reasoned opinion, calling for a re-hearing on Bonn in the St. Hubert case. Unless the court has further questions, I've reserved the rest of my time. Thank you. Do we have any questions from Judge Lohier? Judge Kabanos, thank you. I would like to say it's good to hear your voice, Mr. Albert. But you surely are aware that there are panels ahead of ours that are, have I believe all of these questions that you've argued very well pending before them. Your Honor, I am aware of it with regard to attempted hop-back robbery. I'm not aware with regard to Vicar assault, but I could just be missing it. But I'm aware of it with respect to hop-back robbery. I think that there is authority to the contrary in other circuits, but if you examine the reasoning in Judge Nguyen's dissent and the dissent from denial on Bonn, I just think that rationale, the reasoning there is much more true to the categorical approach and much more forceful. I don't think I can state it better than Judge Jacqueline Nguyen did in the Ninth Circuit, a very recent Ninth Circuit case. I'm just suggesting that may be out of our hands, but okay. Yeah, this is Judge Cabranes. I'm just trying to fade a gloss, a bit of a gloss on what Judge Loyer just mentioned. I think he was, he was adverting to what can only be described as an internal institutional issue, that this case is on one of the proverbial cues. There are several cases which raise some of your issues, which you've raised very well today. But in the nature of things, we have to wait until those decisions have been filed. So we'll certainly take all of your arguments under advisement and we'll consider it, consider them when we come to decide this particular case. But this is a way of explaining that you may have to wait a bit for our decision. Your Honor, thank you. I understand that. I guess in discussing particularly the attempted Hobbs Act robbery with colleagues, we thought that it was at least possible that the judges of the circuit could, as they did, I believe, in the Crosby case, way back post-Booker, could distribute, because it's a reoccurring issue, attempted Hobbs Act robbery could perhaps distribute the opinion among the judges of the court. But I obviously defer to your Honor as to what the procedure will be. Thanks. Thanks very much, Mr. Adler. We'll hear from a police counselor. Can I ask a question about the VICAR statute? Would that be okay? Please go ahead. So I think your point about Voisin involving the domestic violence statute, but didn't it interpret the phrase use of physical force? But here, you can't look at use of without looking at use of against a person. I think Leocal focuses on that you can't read use. In Voisin though, isn't it use of physical force against a person because we're talking about instances of domestic violence, right? So why is that different? It's not the language of the statute. The language of the misdemeanor statute there just said use of, not against a person. And that is narrower and that distinguishes it. So could you explain to me why it's narrower? So I mean, I think I can come up with a sentence that says, you know, I was recklessly swinging my arms around and I swung them against, you know, the guy standing next to me and I'm using the word against to describe a reckless use of force. So why do you think the word against precludes a reckless use of force? It's not just against, it's against the person. And I think... Well, I get that against the person. Okay. Okay. Let's take an example. I mean, a reckless assault could be a mother driving her car and texting while driving and getting in an accident and injuring her child. She would say that she acted recklessly. And obviously there's a use of force, which is a car, but we wouldn't say she used it against her child. Recklessness is a conscious disregard of a substantial risk. But out into the world, it's not targeted, it's not directed. And I think that's the difference. Okay. Excellent. Appellee's counsel. Yes. Thank you. May it please the court. My name is Christopher Dinesi. I represent the United States on this appeal and I also represented the United States in district court below. Your honors, Mr. Morris' two section 924C convictions were both properly predicated on crimes of violence under the force clause and this court should affirm them. I'm going to focus mostly on the second count involving the Vicar assault since as the panel pointed out, the attempted Hobbs Act robbery issue has already been briefed and argued several times before the assault. The parties, well, first of all, there are really two steps to analyzing that predicate crime. First, what exact underlying offense did Mr. Morris plead to? And second, is that offense that Morris pled to categorically a crime of violence under 924C3A's force clause. The parties agree that section 1959A3, which criminalizes Vicar assault is divisible, criminalizes two types of Vicar assault, assault with a dangerous weapon and assault resulting in serious bodily injury. And in enumerating those crimes, Congress adopted the generic definition of the offenses. So those are the offenses we look at here. Given that it's divisible, under Sheppard and Mathis, the modified categorical approach applies to determine which generic assault offense Morris pled to here. And the Sheppard documents clearly show that he pled to assault with a dangerous weapon. He allocated that he possessed a firearm for the purpose of assaulting the victim, that he wanted to shoot the victim because he understood the victim had shot a criminal associate, that he agreed to do so because it would maintain its standing in a racketeering enterprise, and that he in fact shot the victim who died. That allocution, which is a proper Sheppard document, clearly establishes that Morris pled to the divisible assault of assault with a dangerous weapon. And the cases that the defendant cites in his brief, where they say, look to the quote, least of the acts, are cases where there was no record, no appropriate Sheppard document to determine what offense the defendant had pled to. Here it's clear that he allocated to assault with a dangerous weapon. And that crime is a categorically a crime of violence under the force clause. There's no question that assault with a dangerous weapon involves the use of violent force. The Second Circuit recently held in Manners that that crime is categorically a crime of violence, and a number of district courts that are cited in the government's brief also have so held. And Manners says the dangerous weapon element of 1959-83 elevates even the most minimal type of force into violent force sufficient to establish the offense of the crime of violence. That reasoning is in line with this court's holdings, prior holdings in Singh and Walker, which talk about the use of a deadly weapon or dangerous instrument in an assault, making it obvious the statute does require the use of force and violent force, in particular satisfying Johnson. The defendant's only basis for this court to find that assault with a dangerous weapon is not a crime of violence is this claim that it was committed recklessly. And there the defendant simply has not established a reasonable probability that the statute could be applied to cover reckless conduct. And that's because Vicar has, as the court is aware, a heightened motive requirement. In fact, in a Second Circuit case cited by the defendant himself, the court said that it was sufficient for the government to show the defendant, as a member of the enterprise, set out to commit a prescribed act of violence. In other words, intended to do so in order to be compensated or maintain or gain access or status within the enterprise. And none of the cases cited by the defendant involve a reckless assault charge. Mr. Albert referenced several cases in their brief. If you look closely at those district court cases, the term reckless is used as an adjective by the court to describe the nature of the conduct, not to describe the type of assault. In fact, those cases were charged as intentional assaults and attempted murders, all involving intentional conduct and not reckless conduct. So there isn't a reasonable probability that the Vicar statute, not just assault or assault with a dangerous weapon, but Vicar assault with a dangerous weapon could be committed recklessly. And even if it could, even if the court finds that Vicar assault with a dangerous weapon reaches reckless assault, Voisin controls here. And I agree with the questions about the language that the defendant cites here and relies so heavily upon against a property, a person or property or another. There's no magic to the word against. It simply means hitting something or striking something or someone. That does not go to the mens rea required to use the force. And indeed in Voisin itself, the Supreme Court distinguished the Vicar and said that nothing in the Vicar suggested different conclusion that use somehow marks a dividing line between reckless and knowing conduct. While it's not true that as the defendant suggests, the court must find both predicates constitute crimes of violence, the government submits that the other type of assault, serious bodily injury assault, is also categorically a crime of violence. As Castleman recognized, knowing or intentional causation of bodily injury necessarily involves the use of physical force. And when that injury is serious bodily injury, it's clear that force is required to cause such serious bodily injury, violent force of the nature described in Johnson. The defendant again argues in this case, two reasons why serious bodily injury assault cannot be a crime of violence categorically. One, that it could be committed recklessly and two, that it could be committed by omission. For the same reasons as the assault with a deadly or dangerous weapon, the government argued the heightened motive requirement makes it not realistically probable that a reckless crime could be committed in the Vicar context. And that goes for both serious bodily injury and dangerous weapons. And again, he cites no cases in which a prosecution of that sort has gone forward. Omission is particularly incompatible with the motive requirement. The cases that Scott, which the defendant relies on, address are cases involving, well, it's an underlying manslaughter conviction in the state. And the cases that Scott relies upon are cases finding a duty of care owed by a parent to a to somebody in the context of a Vicar assault causing bodily injury. This is not a parent and a child. This is a person who has to, under the elements of the crime, either plead to or be convicted of doing the assault, committing the assault for purposes of gaining a position, maintaining a position or compensation. There's simply not a realistic probability of an omission, an assault by omission being covered by this statute. And again, even assuming that Vicar assault resulting in serious bodily injury reaches reckless assault based on voicing and the reasoning in that case, the government submits that reckless assault would be, still constitute the use of violent force under the Supreme Court precedent of voicing. And I would note, with respect to Moreno, obviously there has been a significant change in the legal landscape over time since that case was decided. But it also, again, like Scott, addresses a state assault crime. Scott addresses a state manslaughter crime and Moreno addressed a state assault crime. We are dealing with a different statute here, a Vicar assault, which has additional elements and a heightened load of requirements that alter the analysis about whether reckless commission of those crimes and a crime by an assault by omission could realistically be prosecuted under the Vicar statute. We would submit that it cannot. And that for that reason, among others, Vicar assault under either of the two prongs does constitute a categorical crime of violence under the fourth clause. I'm happy to address any questions about the Vicar statute, and we would rest on our brief, unless there are questions with respect to the attempted Hobbs Act robbery predicate crime. Thank you very much. We'll hear from Judge Laurier if he has any questions, and then Judge Monashi. No, thank you, Patricia Barnes. Judge Monashi? So on the Moreno question, is it possible that Moreno was decided the way it was because it assumed that reckless force was not a use of force, and that might have changed subsequent to that? I'm not clear exactly why Moreno said that recklessness doesn't count. Your Honor, I've read Moreno carefully, and two things jumped out at me. One was that the parties were very focused on determining whether or not the defendant had pled to a reckless assault crime or an attempted intentional assault crime, and that was really the focus of the argument and the court's decision. The idea being that one cannot commit an attempted reckless crime, and that was at the heart of the litigation. And the second point is that it appears, at least the way the court frames it in the ruling, is that the parties did not dispute that reckless assault would not be a crime of violence under the statute. Particularly in light of the intervening years and the case law that has developed over those years, the government strongly disagrees with that position at this stage and believes that Boycine does stand for the proposition that a reckless use of force can be a use of violence force under Johnson and its progeny. So since you referenced my question about the language you wrote against, thanks to what the opposing counsel said in response, which is that you could have a reckless incident where somebody's recklessly driving a car and they injure their child in the car, and that's not really using force against that person. Well, I think there's a difference between an accident, and this is something that Leachow and ultimately Boycine discuss, and reckless conduct. I mean, an accident is an accident. There's no intentionality at all. Both the resulting harm and the conduct is accidental. As Boycine discusses at length, the word use of force, that terminology, doesn't refer in any way, it doesn't bear on the mens rea, whether it's reckless or intentional. So I think the accident hypo is not a good one because ultimately the accident is on both sides of that equation. It's not, there's no recklessness or intentionality in the conduct or in the ultimate harm. Okay. And I know that some other panel might decide the Hobbs Act robbery question, but I just have a question because I'm curious about it. So Hobbs Act robbery also includes threatening the use of force, right, to accomplish the robbery. So attempted Hobbs Act robbery could also include an attempt to threaten the use of force. So that wouldn't be a use, attempted use, or threatened use. It would be something else. It would be an attempted, threatened use. So how would that fall under the force clause? I think the way, the most rational reading of the statute is in the alternative. So that attempt is really an adjective, or it prefaces the word use of force, not the word threat. So it's an attempted use of force, a threatened use of force, a completed use of force, and that you wouldn't combine the word attempt with the word threatened under the plain reading of the statute to come up with a situation where somebody is attempting to threaten the use of force. I don't think that's that. You're saying you can't have an attempted threatened use of force under Hobbs Act robbery. Like if it's clear that I took an action intending only to threaten somebody, but like I bought a weapon, but I wasn't going to discharge it. I was going to threaten it. That's not an attempted Hobbs Act robbery. Well, just to pull that apart a little bit, the bottom line is I think attempted modifies robbery, not threatened. And so in the end, I think that analysis is correct. But the hypo that you just described could conceivably amount to an attempted robbery because the person has taken the substantial step of purchasing a firearm with the ultimate. It's an attempted robbery, but it was only going to entail the threatened use of force, right? Not the use or attempted use or not the use of force. So attempted use and threatened use, and I'm not attempting to use force, I'm attempting to threaten to use force. Isn't that conduct that's criminalized by the Hobbs Act that isn't covered by the force clause? I think that... One moment. In that case, the offense would still have as an element to threaten the use of force because there has to be a specific intent in the underlying attempted Hobbs Act robbery. Even if I didn't do it, even if I just took a, like I bought the gun, but I never went through the actual threat and use of force. Give me one moment. I just want to take a closer look at the statute that you are looking at at the same time. So the term robbery itself means the taking of the property against the will by means of actual or threatened force, violence, or fear of injury. And then the statute criminalizes attempting to do that so that there has to be a specific intent to use actual or threatened force in order to get the property. And the threatened force would constitute the use of force under the Hobbs Act. I mean, under the Hobbs Act and under 924C. And I guess this is ultimately... So you're saying threatened force is a use of force? But the force clause itself distinguishes. It says use, attempted use, or threatened use. So it can't be that a threatened use of force is a use of force. Otherwise that wouldn't make that part of the statute extraneous, right? I think the fact that you have pulled the gun, if your intention when you buy the gun is to rob the store, pointing the gun at somebody, that pointing of the gun at somebody and threatening the person with it constitutes a use of force at that stage. I guess the issue is that threatened use of force and use of force when you're talking about utilizing a weapon and pointing it at somebody are overlapping concepts. They virtually... You are using force by pointing the gun at the person to get them to give up the property to you. Mr. DeMacy, in the history of the world, has the, so far as you know, the Department of Justice ever viewed or prosecuted a case along the lines of what I think Judge Menachie is concerned with? If it has, I'm certainly not aware of it, Your Honor. The attempted threatened use of force, no, not that I'm aware. And so, well, taking that point one step further, there's not a reasonable, a realistic probability of that sort of underlying crime of violence. Well, that might be right. All right. Thanks very much. Thank you very much. Mr. Albert has reserved two minutes. Thank you, Your Honor. I can't resist responding to that very last question from Judge Lohier. I thought you might not be able to resist, Mr. Albert. I had such a case as a prosecutor. There was an attempted robbery where someone was using a fake gun and it was prosecuted. I don't think it's at all far-fetched. I think it's common. It's not uncommon for someone to consider pursuing a robbery where they don't, they would tell you in their, swear in their heart of hearts, and there'd be plenty of evidence that they're not going to actually use the force against the person. They just want to scare them. That's a little different, I think. But, okay, that's a fair point. A little different from, I think, what the scenario was, as I understood it. Well, it's simply- Someone uses a fake gun knowing that that's going to be perceived, at least, as a threat of the use of force, right? Yes, but it's not using force. And if it's an attempt, then you have none of it. That's the problem with reading attempt as a term of art, which is what everyone is doing. Excuse me, you have a minute left. Okay. The problem with using attempt as a term of art is that you're getting away from what the statute actually requires. The statute requires attempting to use force, not committing an attempt, which has got a special definition of a substantial theft and intent. It's something else. I think Judge Manasci is on to something. I think that is exactly right. And it's part of the problem with the reading that's being urged. Getting back to VIPAR, I want to point out that the government's argument that you can tell that this, the assault here, was assault with a deadly weapon. The first time the government ever made that argument was yesterday in its 28-J motion, its 28-J letter. They have never made that argument before. They submitted their brief at length. They never made that argument. I think they got it right the first time because if you look at the charging instrument, the information, it says assault. It doesn't specify which one. The defendant's statement in his plea elocution don't tell you which one it is. In fact, they probably would make out either of them, but it doesn't tell you what the charge is. Under the terms of the categorical test, you have to know what are you being charged with. If you can't tell, the government has to cover both. Again, I think the government got it right when it didn't make that claim in its original papers. With regard to there's no reasonable chance that the government would ever charge reckless conduct, I would ask if the government is willing to forego a charge to the jury. In the two cases that we cite in our brief at page 11, if the government is going to be willing to forego a recklessness charge to the jury, when the district judge in both cases described the conduct as recklessness, the government is going to forego a reckless charge because it's satisfactory under the statute. Of course, the government's not going to forego a reckless charge. It's common conduct to fire shots off in the distance and hit a bystander. That's exactly what's at issue in those cases. The notion that it's not going to be charged in the Vicar situation is just not right. The government would not take that position when it was prosecuting that very case. I would like to ask the prosecutors who's charging that very case if they'd like to take the position that we'll never charge recklessness. Finally, with regard to omission, I just want to point out that we do in our brief mention reference situations of homicide by omission. It's not the parent-child situation, but rather someone taking steps to isolate someone and not rendering assistance when they've taken the steps to isolate them. We've cited two cases like that in our papers. They could just as easily have been an assault rather than a murder. If the person didn't die, they were just very seriously injured or injured. In fact, the fact that any murder could be charged in assault is illustrated by this very case because Mr. Morris and Count so I don't think the government prevails on the argument that we'll never see anybody ever charging an assault by omission. Assault by omission is charged and it would work in a realistic Vicar circumstance. Thank you very much, Mr. Albert. Thank you, Your Honor. If there's any further questions, I'll rest my brief. Thank you very much. We'll reserve decision in USA versus Morris and we are adjourned. Thank you. Court is adjourned.